## JONES ET AL. *v.* KASPER

[No. 16,498.  Filed May 6, 1941.  Rehearing denied June 24, 1941.
Transfer denied October 17, 1941.]

*Thorpe, Bamber & Harrison,* of Hammond, for appellants.

*Charles G. Bomberger,* of Hammond (*Bomberger, Peters & Morthland,* of Hammond, of counsel), for appellee.

BLESSING, J.—Appellee recovered a judgment against the appellants in an action brought by him for damages on account of personal injuries sustained when a Chevrolet automobile, which he was operating, and a Stutz roadster, being driven by one George Kelleher, collided at a street intersection in the city of Hammond, Indiana.

The complaint was in three paragraphs; and appellants, the defendants thereto, closed the issues by filing an answer wherein they "separately, severally, and jointly" denied each material allegation of each paragraph of said complaint.

The cause was tried with a jury; and, in due course, a verdict in favor of appellee and against all appellants for the sum of $20,000 was returned. Judgment in accordance with the verdict against the defendants (appellants )"and each of them" was rendered. Thereafter, appellants separately, severally, and jointly duly filed their motion for a new trial, which was overruled by the court, the appellants each separately excepting to such action. This appeal followed. The error as-

signed and relied upon for reversal is the overruling of said motion.

Each paragraph of the complaint avers, in substance, among other things, that appellants were driving north on Calumet avenue at the time the collision occurred; that appellant George Kelleher was doing the driving; and that the other two appellants "each directed the control and operation" of said automobile, "or each had the equal right to direct the control or operation thereof."

The charge of negligence in the first paragraph of complaint is that said automobile was being driven "at a careless, negligent and unlawful rate of speed, to-wit, sixty miles per hour, which was greater than reasonable and prudent under the circumstances then existing; that the defendant, George Kelleher, was further negligent in driving said Stutz at such speed as to endanger the life and limb of the plaintiff; that by reason of such negligent conduct said Stutz was driven into and upon the car of the plaintiff in the manner aforesaid; that by reason of said facts each of said defendants was negligent and that said negligence proximately caused the injuries to the plaintiff as hereinafter alleged without any fault on the part of the plaintiff." The negligence charged in the second paragraph is, "that the defendant, George Kelleher, was driving said Stutz in a careless and negligent and unlawful manner in this: that when he saw or could and should have seen said Chevrolet entering said intersection in the manner aforesaid, said defendant was unable to and negligently and carelessly failed to bring said Stutz under control and to stop or turn the same in time to avoid striking said Chevrolet, but carelessly and negligently ran into and upon said Chevrolet in the manner aforesaid, by reason of which facts each of

said defendants was negligent, which negligence proximately resulted in the injuries to the plaintiff as hereinafter alleged, all without fault on the part of the plaintiff." In the third paragraph it is charged, "that the defendants, and each of them were careless and negligent in this: that they each negligently failed to see said Chevrolet entering said intersection and defendant Kelleher carelessly and negligently failed to stop said Stutz or to reduce its speed, or to turn it out of the course of said Chevrolet so as to avoid striking said Chevrolet, but carelessly drove and propelled said Stutz into and upon said Chevrolet with great speed and force in the manner aforesaid, by reason of which facts each of said defendants was negligent, which negligence proximately caused injuries to the plaintiff as hereinafter alleged, without any fault on the part of the plaintiff."

Under the assignment of error, appellants present: (1) That the verdict of the jury is not sustained by sufficient evidence; (2) that the verdict is contrary to law; (3) error in overruling separate motions of appellant Jones and appellant Virgils for a directed verdict; (4) error in refusing to give to the jury the peremptory instructions separately requested by appellants Jones and Virgils; (5) error in giving to the jury the court's instruction number 20; (6) that the damages assessed by the jury are excessive.

Under specifications (1) and (2), the appellants contend that the appellee was guilty of contributory negligence as a matter of law.

The evidence discloses that on the morning of June 19, 1938, at approximately six thirty o'clock, appellants, with Kelleher driving, were proceeding north on Calumet avenue in the city of Hammond, said avenue being a preferential street designated as such by an ordinance

of said city. Calumet avenue was a four-lane highway with a double set of street car tracks occupying the center thereof. The outer lanes of said avenue were paved with concrete and the inner lanes with asphalt. Said avenue is intersected at right angles with the highway known as 116th street. About the same time that the appellants were traveling north on Calumet avenue, the appellee was traveling west upon 116th street with the intention of making a left turn on Calumet avenue. Pertinent to the issue here involved, there were no obstructions to the appellee's view of vehicles approaching from the south for a distance of not less than seven hundred feet, with the same advantage accruing to the appellants as to travelers approaching Calumet avenue from the east on 116th street. Appellee testifies that he stopped at 116th street in obedience to a stop sign at the intersection and that he saw appellants approaching from the south when approximately seven hundred feet away. He said he thought he had time to enter the avenue and make his left turn. He started his car, and as he entered the avenue, traveling at the rate of five miles per hour, discovered that appellants' car was approaching at a high rate of speed, and stopped his car. A collision occurred between the two cars at a time when the appellee's car was east of the east car track and while the front wheels of appellee's car were at some point upon the second lane or asphalt pavement. The appellants Jones and Virgils did not see appellee's car until within a few feet of the same. Appellant Kelleher testified that he saw appellee's car approaching from the east when both cars were approximately seventy-five feet from the intersection; that he saw the stop sign for travelers on 116th street and continued to drive at the same rate of speed; that appellee's car

continued the same way, too, and there was a collision. Kelleher further testified that he began to look for appellee more closely when he came up to the intersection and that appellee seemed to be making a left turn to get across from 116th street and continued to travel at about the same rate of speed he had been traveling and without stopping before entering Calumet avenue.

A city ordinance of Hammond prohibited speed in excess of thirty miles per hour on Calumet avenue; and immediately after the accident, appellant Kelleher admitted that he was driving at a speed of forty-five miles per hour.

In fixing Calumet avenue as a preferential street, the city ordinance of Hammond provides for the erection of stop signs at the intersection in question. Another section of said ordinance relating to the yielding to other vehicles provides: "(c) Yielding to Other Vehicles: The driver of any vehicle who has stopped as required by law in obedience to a stop sign at an intersection shall yield to another vehicle within the intersection or approaching so closely on the intersection as to constitute an immediate hazard, but said driver having so yielded may proceed, and other vehicles approaching the intersection of the intersecting street shall yield to the vehicle so proceeding into or crossing the intersecting street." From the evidence, it is apparent that when appellee first saw appellants' car it was not in the intersection, but several hundred feet to the south thereof. Unless appellants' car was approaching so closely to the intersection as to constitute an immediate hazard, the appellee, in the exercise of reasonable care, had a right to enter said intersection, and, in which event, it was the duty of the appellants to yield the right of way. The appellants' car was coming almost directly toward the appel-

lee, and when the same was several hundred feet away, the speed of the approaching car was difficult to judge. It was only when appellee was in the intersection and the appellants' car was in close proximity that he could have a fairly accurate notion of how rapidly appellants' car was approaching said intersection. Until appellee had notice to the contrary, he had a right to assume that the appellants were traveling at a lawful rate of speed and not in violation of the city ordinance fixing the rate of speed at thirty miles per hour on Calumet avenue, and along which avenue there were signs notifying travelers of the rate of speed permissible. *Kraning* v. *Bloxson, Admx.* (1937), 103 Ind. App. 660, 5 N. E. (2d) 649, 9 N. E. (2d) 107. In the case of *Martin* v. *Kiefer* (1936), — Mo. App. —, 95 S. W. (2d) 1214, in which the litigants were involved in an intersection accident, and the plaintiff, approaching the intersection from the right, saw defendant's car three hundred feet away, the court, at page 1219, said:

"... Plaintiff was not required to anticipate that defendant would drive his car in such reckless and unlawful manner. It was natural and to be expected that he would proceed across the intersection, and defendant had no right to assume that he was aware of defendant's reckless and unlawful conduct in the operation of his car, and would not attempt to cross the intersection in the path of his car. ..."

Neither was the appellee required to wait until all vehicles in sight had passed, for appellants had no absolute right of way. *Kraning* v. *Bloxson, Admx.*, *supra;* *Standard Oil Co. of Ind.* v. *Thomas* (1938), 105 Ind. App. 610, 13 N. E. (2d) 336.

Viewing the evidence most favorable to the appellee, in that he did not realize the excessive speed of the

approach of appellants' car until after he was in the intersection, it cannot be said as a matter of law that the appellee was negligent in stopping his car in the intersection instead of traveling on across. It was for the jury, under the evidence submitted to it, to determine whether or not, under the circumstances, the appellee exercised the care of an ordinarily prudent person in entering the intersection when he did and in stopping his car after he entered Calumet avenue. The facts are in dispute, and it is only where the controlling facts are undisputed or only one reasonable inference can be drawn from the facts by reasonable men that contributory negligence becomes a matter of law. *Bartley* v. *Chicago & E. I. R. Co.* (1940), 216 Ind. 512, 24 N. E. (2d) 405; *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1940), 216 Ind. 545, 24 N. E. (2d) 284.

In view of all the circumstances, and taking the evidence most favorable to appellee, this court cannot say that the appellee was guilty of contributory negligence as a matter of law, and this question was properly submitted to the jury. We hold that on the question of contributory negligence the verdict of the jury is sustained by the evidence and is not contrary to law.

With reference to the motion of appellant Jones and the motion of appellant Virgils for a directed verdict and in refusing to give the jury peremptory instructions in behalf of said last named appellants, these assignments may be treated together.

Upon this branch of the case the evidence discloses that Kelleher and Miss Virgils, among others, were the week-end guests of Mrs. Jones (then Miss Nathanson) at the home of Dr. Nathanson, the father of Mrs. Jones. Mrs. Jones had remained up all night and was packing for a vacation trip. About two thirty a. m., Kelleher,

who had been sleeping downstairs, went up to Mrs. Jones' room, awakened Miss Virgils, who was asleep on a couch, and the three engaged in a conversation for some time. Due to a busy day ahead, Mrs. Jones wanted to go to early Mass; and the three, about three thirty a. m., went to church a few blocks away. The trip to and from church was made in a taxi. When they returned to the residence, the girls started to enter the house. Dr. Nathanson's Stutz roadster was standing at the curb; and Kelleher, discovering it was not locked, suggested to the girls that "we go for a ride." Mrs. Jones testified that Miss Virgils said, "No," and she said, "No, my father would not let us use it, and I knew he wouldn't." Kelleher said, "We will just go around the block with it"; and Mrs. Jones again said, "No"; and Kelleher said, "Just get in for a few minutes, we will come right back." He had the motor running and the girls then got in the car; and after going around the block, Kelleher drove the car on east and onto the Outer drive. As he started towards the Outer drive, Mrs. Jones said, "Let's go back to the house"; but Kelleher kept on, and when he reached the Outer drive he asked Mrs. Jones which way she wanted to go, and she said, "South." They turned south on the Outer drive and continued to about 47th street, when the car was headed back north; and when Mrs. Jones, in answer to a question, said the road leads back to the house, Kelleher changed his direction and again they entered the Outer drive. From this point, they drove south, arriving in Hammond. They continued south until Mrs. Jones suggested that they turn around. This was done and they proceeded north on Calumet avenue to the point of the accident. Mrs. Jones also testified that she had suggested several times that they turn back. She watched the speed limit signs, con-

stantly told Kelleher about them, and he complied with them. Miss Virgils testified that when they returned from church Kelleher suggested that they take a drive before breakfast which they were expecting about seven a. m. and that she went as a guest. "We turned back on our trip because we decided we had been out long enough. Mrs. Jones suggested we go back. It was mutually agreed by all of us that we should do so."

Kelleher testified that he had a conversation with the girls before he entered the car. "We took the car and went for a ride." He also said that Mrs. Jones asked him to turn around while they were driving in Jackson Park. "Neither of the girls directed my movements in the operation of the car; neither of them instructed me as to the manner in which I was to drive, nor where to drive, except Mrs. Jones suggested that we turn around."

Dr. Nathanson testified that he owned the Stutz roadster, the keys to which, on the occasion in question, were in his office; that the ignition lock was open; that Ruth Virgils and George Kelleher were guests in his home at the time; that he not only did not give them permission to use the car, but deliberately told them before to keep their hands off that car, repeatedly. He said he told his guests as well as his daughter not to touch the car.

There is no controversy about these facts, and the question for our decision is: Did the court commit error in refusing to direct verdicts in behalf of appellants Virgils and Jones?

There can be no responsibility for this accident and the resulting injuries to the appellee lodged against the appellants Jones and Virgils unless there was such an agency existing between said appellants and appellant Kelleher that would make Jones

and Virgils chargeable with the negligence of Kelleher. The appellants Jones and Virgils contend that they were guests of Kelleher and therefore no agency existed. The appellee contends that all three appellants were engaged in a joint enterprise and therefore there existed a mutual agency. Appellee further contends that appellants Jones and Virgils were independently negligent because they directed the control and operation of the Stutz, or each had the equal control or right to direct the operation of the car. The liability of Jones and Virgils under the last contention must rest on agency as neither Jones nor Virgils actually drove the car in which they were occupants.

It is beyond dispute that Dr. Nathanson's Stutz roadster was unlawfully appropriated. Who appropriated it? All of the appellants had been warned not to touch the car. Can it be said, under the circumstances, that Kelleher, an admitted wrongdoer, could, by coaxing Jones and Virgils, lure them into the car as his guests, and thereby remove or obliterate any wrongful participation on the part of said Jones and Virgils? We think not. The relation of host and guest presupposes that the host has a right to extend hospitality to the guest. Kelleher had no right to say who should ride in the car, and hence could not have invited his coappellants to become his guests. *Richards* v. *Parks* (1936), 19 Tenn. App. 615, 93 S. W. (2d) 639. We can find no sound reasoning for an affirmative answer to this question. When Jones and Virgils occupied the car and consented to join in the trip, all of the appellants became joint tort-feasors in the appropriation of the vehicle; and the joint participation in this wrongful taking placed the Stutz roadster in their joint possession.

The next inquiry with which we are concerned is whether or not appellants' joint possession gave each appellant an equal voice in the control and operation of the car.

In the case of *Fox* v. *Lavender* (1936), 89 Utah 115, 56 P. (2d) 1049, husband and wife were joint owners of a car which the husband was driving at the time of the accident. Mrs. Fox, plaintiff, and her husband were passengers in the car on Mrs. Lavender's solicitation, and Mrs. Fox was injured in the accident. The question arose as to Mrs. Lavender's liability for the negligence of her husband. The court concluded that joint ownership of the car with both owners present was a joint possession which gave rise to the rebuttable presumption of joint control from which flows a reciprocal agency. The court in this case makes an analysis of many situations and in summing up such analysis says, at p. 139, concerning joint owners:

"If two or more joint owners are in the car, they will be presumed, without more shown, to have joint right of control and therefore the driver will be presumed to be driving for himself and as the agent of the other present joint owners."

This doctrine found sanction in the case of *Apperson* v. *Lazro* (1909), 44 Ind. App. 186, 87 N. E. 97, 88 N. E. 99. Co-ownership is not discussed in the opinion of the court, but an examination of the record discloses that the verdict of the jury was upheld because the defendants were joint owners and both were occupants of the car at the time of the accident. Our court has gone a step beyond the holding in the case of *Apperson* v. *Lazro, supra;* and in the case of *Willis* v. *Crays* (1926), 84 Ind. App. 253, 151 N. E. 13, it was held that where the wife's automobile was being driven by the husband with the wife present in the car and permitting her husband to drive at a high rate of speed,

the jury might consider the above facts on the question of the husband's agency along with the other facts in the case; the other facts being that the husband did not go to the wrecked car to render assistance while the wife did, and after rendering some assistance immediately left the place of the accident without leaving any name or address and without making any report of the accident as required by statute. It should be noted with reference to the last case cited, that it has been held by our court that the mere fact of marriage ·relation does not establish agency between husband and wife, but may be considered as a circumstance in determining the question of agency. *Roper* v. *Cannel City Oil Co.* (1918), 68 Ind. App. 637, 121 N. E. 96.

In the case of *Fox* v. *Lavender*, 89 Utah 115, the court, after analyzing the cases involving the presence of the owner with a non-owner driving, said, at page 132:

"We believe that the better rule is that where an owner is an occupant of his own car there arises a rebuttable presumption that he has control and direction of it. It is not as if he were absent as in the case of *McFarlane* v. *Winters, supra*, where this court refused to indulge the presumption. A person being conveyed by his own vehicle is presumed to control his own property in his own transportation. Moreover, as a practical matter the rule is a salutary one. A person injured by the negligence of the driver ordinarily cannot know the real relationship between the driver and the passenger owner. They may not know it themselves. If the presumption of agency is indulged, it throws upon the proper parties the burden of producing evidence to negative the relationship rather than upon the plaintiff to produce evidence to prove it."

The cases heretofore referred to are important only in so far as establishing agency in the one actually

operating an automobile. If another or other occupants of a car beside the driver are to be held responsible, either agency or mutual agency must of necessity be established. Where mutual agency is established, we speak of it as the right of joint control. Joint control arises out of a joint adventure, but it is not always necessary to prove a joint adventure to establish joint control. In the case of ·Coleman v. Bent (1924), 100 Conn. 527, 124 A. 224, the occupants of an automobile had agreed to go on a fishing trip and to share expenses of the trip equally. There was a collision; and at the time of its occurrence, the owner of the car was not driving. In fixing the legal status of the occupants of the car, the court said:

> "What sort of an arrangement will make the parties to it joint adventurers in the operation of the vehicle in which all are riding, is well settled. The typical case is where two or more jointly hire a vehicle for their common purpose and agree that one of their number shall drive it. In such a case the possession of the vehicle is joint and each has an equal right to control its operation. The better considered cases hold that such common possession, and common right of control, resulting in common responsibility for negligent failure to control, are the earmarks of the legal relation of a joint adventure in the operation of the vehicle."

This statement is criticized, at page 136, in the opinion of the court in the case of Fox v. Lavender, supra, in the following language:

> "Here is a typical case where the relation of premise and deduction is reversed. The deduction of joint control arises from a joint venture and not joint venture from joint control. If once joint control in the trip is proved, there is no need of proving a joint venture. There was no need in the Coleman case of holding that 'common possession and common *right of control,* resulting in common responsibility for negligent failure to control, are the *ear marks of the legal relation of a*

*joint adventure in the operation of the vehicle.'*
The mere determination that there was joint control results in the conclusion that there was joint responsibility for negligence."

Referring to the case of *Clark* v. *Town of Hampton* (1929), 83 N. H. 524, 145 A. 265, the court, at pages 136, 137, said:

" 'If this evidence was accepted as true, it showed a situation where, for purposes of present use and control, the plaintiff stood in the position of a part owner in common with Swanton. In this situation the plaintiff and Swanton proceeded to use the car for their mutual benefit. This would plainly amount to such a joint control that each party would be the agent of the other in the conduct of their common undertaking. . . . No case has been cited or found holding that common owners, using the car for a common purpose, both being present, are not responsible, each for the other, as to the operation of the car.' "

In that case, two owners of the car with other common owners thereof, used the car to go from their camp to their employment in an apple orchard. Commenting on this situation, the court in the case of *Fox* v. *Lavender, supra,* said:

"This was a common purpose, but not a joint venture. Had the court put the decision purely on the basis of a common possession springing from a common ownership which gave rise to a presumption of joint control and therefore mutual agency, without resort to a so-called common undertaking, we think it would have rested on firmer ground."

If the use of the phrase was intended to indicate a joint enterprise, the criticism above referred to would be indorsed in those jurisdictions which hold that to constitute a joint enterprise there must be a common purpose beyond the trip itself. But if such phrase was used to indicate a common destination by joint owners,

both being present, then it would appear that the courts of Utah and New Hampshire are in agreement on the proposition that in such a case the possession of the vehicle is joint and each has an equal right to control its operation. There can be no merit in the contention that a joint adventure must always be first established before there can be joint control.

If A and B jointly owning or jointly hiring a car use the same to reach their common destination but with different purposes in mind after arriving at such destination, without anything more, joint control may be inferred from the joint possession. In the Restatement of the Law of Torts, Volume 2, Section 491 (f), we find this statement:

> "The fact that the driver and another riding with him are in joint possession of the vehicle is sufficient to make any journey taken by them therein a joint enterprise irrespective of whether the journey is or is not made for a common business purpose. This is so not only when the joint possession arises from a joint hiring but also when it results from a joint ownership."

Appellants contend that the principle laid down in the above quotation is restricted solely to a joint possession arising from a joint hiring or a joint ownership. With this contention we cannot agree, and the conclusion in the above quotation is illustrative but not all inclusive.

In the case of *Curran* v. *Lehigh Valley R. R.* (1930), 299 Pa. 584, 149 A. 885, five friends, including the owner of the car, agreed to take a pleasure ride. They had no destination in mind, and after a time the owner of the car quit the party but the other four continued riding for pleasure. After the owner of the car quit the party, the remaining four were involved in a collision with a train of the Lehigh Valley R. R. Co. and one of the occupants, Curran, was injured and brought

suit against the railroad company for damages. Recovery was denied on the ground of plaintiff's contributory negligence, the court holding that all of the occupants of the car were equal managers of the vehicle. In other words, here were four borrowers of the car in joint possession; and, being in joint possession, the driver of the automobile had no more control over the management of the car than one of the nondriving occupants. The reasoning of this case is sound and justifies the inclusion of borrowers along with joint owners and persons engaged in a joint hiring referred to in the above quotation from the Restatement of the Law of Torts.

If there may arise a presumption of joint control or if an inference of joint control may be drawn from joint possession of joint borrowers, what logic would inveigh against the same inference being drawn or the same presumption arising out of a joint wrongful appropriation and possession of Doctor Nathanson's car? In the case of *Bates* v. *Tirk* (1934), 177 Wash. 286, 31 P. (2d) 525, permission of the parent was given to a daughter and one of her boy friends, who drove the car, to use the parent's car to attend a football game. After the game an accident occurred in which the daughter of the owner of the car was injured. In a suit to recover damages on behalf of the daughter, there was a question as to whether they were, at the time of the accident, on the way home from the game or whether they were making a trip to secure an overcoat for the driver in anticipation of returning to the football field for a second game. The lower court instructed the jury that the daughter was an invitee. This was held to be error and that it was a question for the jury as to whether or not the daughter was engaged in a joint enterprise. As to whether

or not at the time of the accident the car was being used to return home or preparatory to a trip to a second game which was unauthorized by the parent, the court, at page 294, said:

> "There is another aspect to the situation which argues to the same conclusion. Assuming that the car was being used at the time for a purpose that was not authorized by its owner the case would be the same as though the three parties had taken the car in the first instance without permission. They, themselves, recognized that it was necessary to secure such permission before they could use the car. Without that permission, they would be wrongdoers."

It is our opinion, after full consideration of the law and facts in this case, that all of the appellants in the case at bar stood in the same relationship, one to the other, as would joint owners, joint hirers, and joint borrowers who are in joint possession, and that the jury, without more, was fully warranted in inferring a joint control from this relationship. Joint control being established, there existed the cross-relationship of principal and agent between each of the appellants; and the nondriving occupants were chargeable with the negligence of appellant Kelleher who was operating the car.

In addition to the inference of joint control, authorized by the proof of joint possession, the jury had a right to consider the statements of appellants Jones and Virgils. Mrs. Jones stated that she watched the speed limit signs, constantly told the driver about them, and he complied. She also stated that, "We turned around at my suggestion." She also stated that Miss Virgils agreed with her, and there is some evidence that Mrs. Jones gave directions as to the route. Miss Virgils testified that Mrs. Jones

suggested that they go back and also stated: "It was mutually agreed by all of us that we should do so. We turned around at that point because we decided we had been out long enough."

The appellants contend that there was no causal connection between the wrongful taking of the doctor's car and the accident and injuries suffered by the appellee. It is apparent that the wrongful taking of the car was not the proximate cause of the collision and the resulting injuries to the appellee. The proximate cause of the collision as found by the jury was the negligence of appellant Kelleher, but it was necessary to show the relationship existing between appellants to determine whether one or all of the appellants were liable for the negligence of the driver.

There was sufficient evidence to sustain the verdict as to the liability of appellants Jones and Virgils, and the verdict is not contrary to law. The court's refusal to direct a verdict for appellants Jones and Virgils is not error.

The next error complained of by appellants Jones and Virgils is with respect to instruction 20 given to the jury by the court of its own motion. Appellants challenge this instruction on three grounds: (1) That the instruction omitted the element of joint right of control; (2) that undue prominence is given to certain facts, some of which are immaterial to the issue; and (3) that the facts proven did not establish a joint enterprise as indicated by this instruction. While the court does not use the phrase "joint control or the right of joint control" the instruction does set out the things which would establish the right of said appellants to joint control in the operation of the car. In addition to this, the jury was told by the court's instruction number 21 that to constitute com-

mon or joint enterprise there should be a joint interest or community of interest in the object or purpose of the undertaking and the equal right to govern the movements and conduct of the driver of the automobile. In view of the rule that all of the instructions of the court must be considered as a whole, the first objection of appellants is not well-founded. An instruction, even though erroneous, is harmless unless it misleads the jury. In this cause a number of interrogatories were propounded to the jury; and by the answers to these interrogatories, the jury found specifically that both appellants Jones and Virgils had a right to direct appellant Kelleher as to how he should operate the car in which they were riding. In view of our conclusion that the evidence was sufficient to establish the right of joint control in appellants Jones and Virgils without the proof of a joint enterprise, it is apparent that the verdict would necessarily have been the same under a correct instruction on the right of joint control, and without reference to the question of joint enterprise. *Baltimore etc. R. Co.* v. *Morris* (1913), 54 Ind. App. 479, 103 N. E. 35.

What we have said disposes of the first and third objections to the instruction. With respect to the second objection, it is the opinion of this court that no undue prominence was given to any facts set out in the instruction and the instruction was in no way mandatory. In this instruction the court told the jury that participation on the part of the defendants not actually handling the wheel could be shown by circumstantial evidence and that among other things it might consider the purpose of the journey, the giving of attention to speed and traffic signs by the nondriving occupants, advising the driver thereof, the approval of the speed, and the fact that all of the

parties went voluntarily, if such facts were shown in the evidence, and all other facts in evidence which bore upon the question of participation.

It is within the province of the trial court to properly refer to certain facts without assuming that they have been found and to instruct the jury as to the law applicable if those facts are found. *Bronnenburg* v. *Charman* (1881), 80 Ind. 475; *Cook & Bernheimer Co.* v. *Hagedorn* (1925), 82 Ind. App. 444, 131 N. E. 788.

The remaining error relied upon for reversal is that the damages assessed by the jury were excessive. The evidence shows that appellee was a man 64 years of age, in good health, and earning one hundred and eighty-five dollars ($185) per month. He has not been able to work since the accident. The injuries were serious, consisting of a fracture of the left clavicle, paralysis of the entire right side including leg, face, and loss of speech. There were two weeks of hospitalization and confinement to his home for several weeks thereafter. Appellee was unable to walk for two months and following that his locomotion was impaired. There was also injury to his hearing, complete loss of the use of his right arm and probable permanent loss of his power of speech. With these facts undisputed, we find nothing in the record to show that the jury was swayed by passion or prejudice; and we are unwilling to substitute our judgment for that of the jury and of the court who had this matter under consideration on the presentation of the motion for a new trial. We admit that the verdict of the jury in the sum of twenty thousand dollars ($20,000) is a very substantial sum of money, but we cannot say as a matter of law that it is beyond the amount that fairly

compensates the appellee for the serious injuries suffered as a result of the negligence of the appellants.

Finding no reversible error, the judgment is hereby affirmed.

NOTE.—Reported in 33 N. E. (2d) 816.