GWALTNEY DRILLING, INC. *v.* MARIETTA MCKEE.

[No. 969 A157. Filed June 30, 1970.]

*Robert H. Hahn, Bamberger, Foreman, Oswald & Hahn,* of Evansville, *John W. Moomaw,* of Bloomfield, for appellant.

*Alvin Seal, Seal & Seal,* of Washington, *James B. Sparks,* of Bloomfield, for appellees.

SHARP, J.—This is an action brought by the Appellee against the Appellant Gwaltney Drilling, Inc., and Commonwealth Natural Gas Corporation to recover damages for personal injuries sustained by Appellee Marietta McKee when she allegedly fell in a trench which Appellant Gwaltney Drilling had allegedly excavated and backfilled in a public alley-street in the Town of Odon, Indiana.

The action below was tried against only the Appellant and not against Commonwealth Natural Gas Corporation. Commonwealth filed and was granted a Motion for Summary Judgment below, and Appellee McKee then amended her complaint by removing Commonwealth as a defendant. Commonwealth has filed no brief, was not named in the judgment below, and is not a proper party to this appeal.

The Plaintiff's complaint alleged the Defendant knew or should have known of the dangerous condition of the trench and charged Defendant with the following specifications of negligence:

"(a)  In leaving loose and soft dirt in said trench.

(b)  In failing to properly tamp the earth in said trench so as to make it safe for pedestrians and particularly for plaintiff.

(c)  In failing to make proper and necessary inspection to determine the condition of said trenchway.

(d)  In failing to erect warning signs so as to notify plaintiff and other persons walking in said area of said dangerous condition."

The Defendant-Appellant filed answer in admission and denial under Rule 1-3 of the Rules of our Supreme Court. The case was tried by a jury which resulted in a verdict of $35,-

000.00 for Appellee. The Motion for New Trial of Appellant was overruled which is the sole assignment of error here.

We must consider the evidence and all inferences in the light most favorable to Appellee.

The evidence discloses that Appellant as contractor had done extensive excavation, trenching and ditching in the Town of Odon, Indiana, as a part of the installation of gas lines in said town. This project had commenced sometime before June 12, 1967, and was still in process on that date. The Street Commissioner of the Town testified that the trench in the alleyway that connects Oak and Spring Streets was a part of the system of trenches dug by the Appellant at that time in the town. The same method of digging was used on all the ditches dug at that time in this town by Appellant. He testified that in some places these trenches were not mashed down after they were filled. In this regard the Street Commissioner testified:

"Q. Just generally in the town—what you have observed in regard to these trenches after they have been filled?

A. Well, if you mean on Oak Street—there are places on Oak Street—places all over there that I have had to have filled.

Q. Mr. Tarvin, did the defendant then fill these trenches more than one time?

A. Yes, I would say they did after so long a time.

Q. How many times did they fill these trenches?

A. Oh I don't know. I don't know. I would say I know of two times. I'm not going to say any more.

Q. Have you observed them—have you seen them filling the trenches the second time.

A. Yes.

Q. And what was the condition of the trenches before they filled them the second time?

A. Some of them had gone down a foot or six inches and some of them you could see the pipe.

Q. What, if anything, Mr. Tarvin, did you see and observe in regard to the trenches following a rain?

A. Quite a few of them had settled.

Q. What do you mean by that, Mr. Tarvin?
A. There would be places where the dirt didn't go down. There would be holes there."

Appellee, Marietta McKee, further testified on direct examination that on June 12, 1967, the date of the accident, she went to the home of Harry Mize and parked on Oak Street in order to go with Judy Mize to Huntingburg for a ceramic lesson. She parked her car on the east side of the street and walked across the street to the front gate of the Mize residence. She went through the house out to the carport on the east side of the residence. She was a few minutes early and Judy Mize was not quite ready and Mrs. McKee told Judy Mize that she would walk to her car and get her basket and then go to the Mize car and wait for Judy Mize. After walking through the carport she went down along the east side of the Mize's yard into the street and as she approached the street she moved to the east and southwest and looked these directions for approaching cars. As she approached this place she looked to the east for approaching cars and then to the southwest and then proceeded on her way and about that time her foot went into the soft ground and as she was falling her back snapped; it was just like a stick breaking and she fell to her knees. She injured her right leg and knee. She immediately thought that she should get out of the road and she pulled herself across the blacktop and over into the grass and yelled for help. Judy Mize found her shortly and she yelled for help. She was taken by ambulance to the hospital in Washington, Indiana.

There is a little street which runs east and west and an alley runs north from this street. The place where she stopped was from the south edge of the alley and was on the north side of the little street which runs east and west; she stepped in the hole on the north side of the east and west street with her right foot and fell southward or southwest. She fell on June 12, 1967 at about 7:45 to 8:00 in the morning. She

pointed out various parts of the accident scene on a blackboard diagram. The alley was not paved on June 12, 1967, but there was some blacktop on the curved part of Oak Street where it curved to the other street that runs east and west. Before she fell she had crossed the blacktop on Oak Street south of where she fell. She was walking south and a little to the west when she fell. Her car was parked on the east side of Oak Street under a shade tree about thirty-five feet from the other street mentioned. She was coming down the alley intending to go over to her car's right passenger door to obtain her purse and basket.

One witness, Palmer Bechtel, who had been a resident of Odon for 35 years testified that prior to June 12, 1967, he observed Appellant putting in a gas line there. He saw them digging a trench and gas line. Some of these trenches came by his residence which adjoins his garage. The lines came in front of his residence, between the residence and the garage, and then south of the garage and down to the next lane to Spring Street. He had occasion to see this work being done generally in the Town of Odon and Gwaltney Drilling Company was there most of the summer. The trenches were for the most part filled with a tractor and blade. A bulldozer type of blade was used at least in his area. A tractor with blade pushed the dirt into the trench. He observed that the dirt naturally settled after a rain and would sink. He observed no warning signs in this area and there was no watchman there to warn people. After a rain the dirt settled down and left the ditch partially open. In his area nothing else was done with the trench except to scrape and push the dirt into the trench. In his area he filled the trench himself after the tractor pushed the dirt into the trench.

Judy Mize, a companion of Appellee on the date in question, testified she saw Marietta McKee on June 12, 1967, and they were going to a ceramic lesson at Huntingburg. She first saw Marietta McKee on that day in Odon at the home of her father, Harry Mize, at about 8:00 o'clock. She and Mrs. Mc-

Kee were going out the back door and Mrs. McKee went on down to her car to get her basket and things to take along. Mrs. McKee was going to put these items in the Mize car to go to Huntingburg and Mrs. McKee fell in a trench on the way to the car. She was looking around for Mrs. McKee before she saw her, and then she went out to find out what was wrong and to see if she could help her.

Mrs. McKee was on the other side of the street laying at the side of the grassy area by the sidewalk. She went to see if she could help Mrs. McKee and then she called the ambulance to come and take Mrs. McKee to the hospital. Reverend Lovell was in the area at the time and came up and there were some other men that were working there with the gas company who did not come up to offer help. These men were working across the street where the York's Pharmacy was being constructed. The men with the gas company got a camera and came back before the ambulance arrived and took possibly two or three pictures. Judy Mize then went in her car to go to Huntingburg. Reverend Lovell is now in Terre Haute. Her mother's name is Lorene. Her mother just had eye surgery and her other eye is going bad. Lorene Mize is in St. Louis and they didn't want her to take the risk of losing what sight she has by coming to the trial. Judy Mize saw the trench on the day in question and it was located a little to the right of the telephone pole and back in Maxwell's yard. She indicated the trench's position, crossing the street, on the diagram with respect to a telephone pole and a bush. She observed the trench and it wasn't even, was loose and just dropped down where it cut across. She saw them dig and fill up the trench. They filled it up with what appeared to be a garden tractor which went over it and filled it up. Some type of blade was on the front of the tractor and the blade pushed the dirt into the trench. There were no barricades, warning signs or watchmen where this happened.

On cross-examination the Appellee testified:

"Q. And when you went there did you know—

A. As far as that definitely being trench work I did not know that. I said I saw dirt which had been dug up around there."

The Appellant introduced evidence that during the summer of 1967 as a part of this project a total of 71,245 feet of gas line was laid. A scaled drawing of the entire system was put in evidence by the Appellant. The inspector on this job testified extensively on all aspects of this job in the *entire* town of Odon.

The Appellee was 51 years of age at the time of this accident and was a housewife and mother of two grown children. Before this accident she did all her household duties and gardening, and operated a tractor and truck helping her husband on the farm. Prior to June 12, 1967, she had experienced no back trouble. She participated in extensive church and community activities. She testified that since June 12, 1967, she has had to severly limit all such activities. Immediately after this accident she was taken by ambulance to the hospital which was full. She was examined by Dr. Rohrer who testified at the trial. She was then taken home by ambulance. X-rays were taken. She experienced pain in her back and right leg. She was given pain medication by her doctor who also administered heat treatments to her back. These treatments continued up to the time of trial—March 1969. She was also treated by a chiropractor who testified at the trial. He made adjustments to her back and right leg. There was also a numbness in her right leg. She has experienced pain and difficulty in sleeping. Since the accident she has lost weight.

Dr. Rohrer testified when he first saw Appellee on June 12, 1967, she was in acute misery and pain. At that time she experienced difficulty in moving about. There was tenderness over the entire sacral region and it was impossible for her to lift her knees without suffering pain. In all Dr. Rohrer saw Appellee 38 times between June 12, 1967, and March 1969, for the purpose of treating Appellee's condition. The x-rays

showed some degeneration of the intervertebral disc in the lumbar spine, osteoporosis and kyphosis. The doctor testified a person can suffer a very painful injury to the back without breaking any bones. An injury to the arthritic back is more serious than to a normal back. The area of Appellee's injury is a very critical and sensitive one. On cross-examination Dr. Rohrer testified that none of the four conditions found in Appellee's back would cause disturbances and pain of the intensity without the accident. On the question of causation, Dr. James Rohrer testified:

"Q. And you say you saw her in the Emergency Room?
A. That's right.
Q. And did you talk to her there?
A. Yes.
Q. And did you examine her at this time?
A. Yes Sir.
Q. And what did you find from this examination Doctor?
A. Well I found a lady who was in rather acute misery. She was in great pain. It was very difficult for her to move around without a great deal of misery and intense pain. On examination I found a great deal of tenderness over the entire lumbar sacral region. That is her back, and while I was trying to examine her— examine her lifting her knees, it was impossible for her to do this without her suffering much pain.
Q. Dr. Rohrer, in your opinion as a medical man and from having treated Mrs. McKee over this period of time and knowing and treating her prior to June 12, 1967, do you have an opinion based upon reasonable degree of medical certainty that her existing condition now was caused by the accident on June 12, 1967?
A. I do—I think.
Q. What is your opinion?
A. I have an opinion that it was due to the injury she received—the injury she sustained on that day."

Dr. Mumaw, the treating chiropractor, testified that he first saw Appellee on August 28, 1967. He testified the muscles in her sacral area were very tight and tender. In all he treated

her eight times, the last on December 30, 1968. Because of tenderness in her sacral area he gave her light massage or adjustment. His diagnosis was traumatic maluficitis of the sacral area. The condition could have resulted from an injury. He also had x-rays made of her spine. These x-rays disclosed kyphosis, osteoporosis, and a light narrowing of the disc between L5 and S1.

Appellee's husband and four other witnesses testified extensively as to Appellee's condition and activity before this accident and her pain, condition and limited activities since.

On the American Mortality Table which was put in evidence, the life expectancy of a person 51 years of age is 20.20 years.

The Appellant here argues five issues:

(a)   A verdict should have been directed for Appellant.
(b)   The trial court should have withdrawn from the jury certain issues pertaining to negligence.
(c)   Giving court's instruction number 8.
(d)   Error in admission of certain evidence.
(e)   Excessive damages.

The Appellant contends the trial court should have directed a verdict for it at the close of all the evidence.

A directed verdict is proper where there is a total absence of evidence on an essential issue or where the evidence is without conflict and is susceptible of but one inference in favor of the party asking for the directed verdict. *Whitaker* v. *Borntrager*, 233 Ind. 678, 122 N. E. 2d 734 (1954) ; *State Farm Life Insurance Co.* v. *Spidel*, 246 Ind. 458, 202 N. E. 2d 886 (1964) ; *Hendrix* v. *Harbelis*, 248 Ind. 619, 230 N. E. 2d 315 (1967).

In *ASC Corp.* v. *First Nat'l Bank, etc.*, 241 Ind. 19, 23, 167 N. E. 2d 460, 462 (1960), Judge Bobbitt, speaking for our Supreme Court, said:

"The decision of the trial court comes to us clothed with the presumption that a correct result was reached and the

burden is upon appellant here to overcome that presumption. Souerdike v. State (1952), 231 Ind. 204, 206, 108 N. E. 2d 136.

* * * * In determining that question, however, 'we may consider only the evidence most favorable to the successful party, and it is only where the evidence is without conflict and leads to but one reasonable conclusion, and the trial court has reached a contrary conclusion, that the decision will be disturbed as being contrary to law. Wilson, Admx. v. Rollings (1938), 214 Ind. 155, 14 N. E. 2d 905; Rowe v. Johnson (1945), 223 Ind. 289, 60 N. E. 2d 529; Pokraka v. Lummus Co. (1952), 230 Ind. 523, 104 N. E. 2d 669, and cases cited.' Souerdike v. State, supra (1952), 231 Ind. 204, 206, 108 N. E. 2d 136.

See also: *E. H. Purcell & Co., Inc.* v. *Agricide Corp.* (1956), 126 Ind. App. 476, 134 N. E. 2d 233; *Newton* v. *Cecil* (1955), 125 Ind. App. 416, 421, 124 N. E. 2d 713."

See also, *Hinds* v. *McNair,* 235 Ind. 34, 129 N. E. 2d 553 (1955) and *Silvestro* v. *Walz,* 222 Ind. 163, 51 N. E. 2d 629 (1943).

In determining whether a directed verdict should be given the court must accept as true all facts which the evidence tends to prove and draw, against the requesting party, all inferences which the jury might reasonably draw. *Garr* v. *Blissmer, et al.,* 132 Ind. App. 635, 177 N. E. 2d 913 (1961) and *Huttinger* v. *G. C. Murphy Co.,* 131 Ind. App. 642, 172 N. E. 2d 74 (1961).

These rules were recently discussed and reaffirmed by this court in *Lloyd* v. *Weimert* (1970), 146 Ind. App. 666, 257 N. E. 2d 843 and in *Gunder et al.* v. *State* (1968), 250 Ind. 689, 695, 238 N. E. 2d 655.

In determining whether a verdict is contrary to law and whether a verdict should have been directed for Appellant, the tests and rules to be applied in deciding both questions are similar. Appellee is entitled to all reasonable inferences from the evidence in the record most favorable to her and unless such evidence and inferences reasonably lead exclusively to the conclusion contended for by the Appel-

lant and not other, the trial court should be affirmed in upholding the jury verdict.

In oral argument the Appellant's counsel stated that Appellant did in fact dig and backfill a trench in the immediate vicinity of where the Appellee fell and was found. Such an operation may result in looser dirt that becomes soft when wet. This is especially true when the dirt has not been pressed down properly as a part of the backfilling process. From the testimony of all the witnesses the jury could have properly determined that Appellee's fall and injury was caused by a dangerous condition created by the Appellant.

There was no error in the trial court's refusal to direct a verdict for Appellant and likewise it follows the evidence was sufficient to go to the jury.

The Appellant lays great stress on *Halkias* v. *Gary National Bank* (1968), 142 Ind. App. 329, 234 N. E. 2d 652, as being a "similar factual situation." There is, however, at least one basic distinction. In *Halkias* the question concerned the natural accumulation of snow and ice. Also, in *Halkias* there was a question as to whether she really slipped on the snow. Here there is evidence from which the jury could infer that Appellee fell in a trench artificially constructed by Appellant at a place where said trench had not been properly backfilled. The jury did not have to conjecture or speculate to reach its verdict in this case.

The Appellant asserts that all specifications of negligence should have been withdrawn from the jury. From above summary of the evidence it is readily apparent that there was sufficient evidence and reasonable inferences therefrom to submit each allegation of negligence to the jury.

The trial court gave, over Appellant's objection, final instruction number 8, which reads:

"The Court instructs you that in the absence of notice or knowledge to the contrary, a pedestrian exercising ordinary care and making normal use of a public way has the right

to assume that it is in reasonably safe condition, and while she must use ordinary care for her personal safety and make reasonable use of her faculties to avoid injury to herself, she is not required to keep her eyes fixed on the ground or to be on a constant look-out for danger.

If you find by a preponderance of the evidence that the conditions complained of by plaintiff in her complaint were open and obvious, then I instruct you that the defendant was under no duty to warn the plaintiff of such conditions.

Even if a defect is one which might be visible to a person who is looking for such a condition, it does not follow that a pedestrian is guilty of negligence as a matter of law in failing to see and avoid it.

Whether plaintiff made reasonable use of her faculties and whether she should have observed the condition which allegedly caused her injury are questions of fact for you to decide."

A person is required to make reasonable use of his faculties and senses to discover dangers and conditions to which he is or might be exposed. 21 I.L.E., *Negligence,* § 85, p. 341.

A person traveling along a highway is not required to keep his eyes on the ground at all times but only to make such use of his faculties as would a reasonably prudent person under the circumstances. *Indiana Utilities Co.* v. *Wareham* (1918), 66 Ind. App. 542, 552, 118 N. E. 572.

In the case of *Burks* v. *Walters* (1957), 127 Ind. App. 358, 367, 141 N. E. 2d 872, this court stated the rule concerning instructions as follows:

"The rule is firmly established that if, 'considering all of the instructions together, it fairly appears that the law was stated with substantial accuracy, so that the jury could not have been misled, no ground for reversal is presented, even though a particular instruction, or some detached portion thereof may not be precisely accurate.' Cooper v. The State (1889), 120 Ind. 377, 22 N. E. 320; Hamling v. Hildebrandt (1948), 119 Ind. App. 22, 81 N. E. 2d 603; H. E. McGonigal, Inc. v. Etherington (1948), 118 Ind. App. 622, 79 N. E. 2d 777; Riechmann v. Reasner (1943), 221 Ind. 628, 51 N. E. 2d 10; Stinebaugh v. Lucid

(1937) (T.D. 1937), 103 Ind. App. 690, 7 N. E. 2d 69; Southern Ind. Gas & Electric Co. v. Storment (1934), 206 Ind. 25, 188 N. E. 313; Yellow Cab Co. v. Kruszynski (1935) (T.D. 1935), 101 Ind. App. 187, 196 N. E. 136; Jones v. Kasper (1941), 109 Ind. App. 465, 33 N. E. 2d 816; Hough v. Miller (1942), 112 Ind. App. 138, 44 N. E. 2d 228."

Also, in the case of *Glen Park Democratic Club, Inc.* v. *Kylsa* (1966), 139 Ind. App. 393, 398, 213 N. E. 2d 812, this court stated:

"All applicable law in a given case need not be incorporated into one instruction, but instructions should be considered, with reference to each other, and as an entirety and not separately or in dissected parts. Van Drake v. Thomas (1942), 110 Ind. App. 586, 603, 38 N. E. 2d 878; Livingston v. Rice (1933), 96 Ind. App. 176, 178, 184 N. E. 583."

In this case the trial court rejected all of the instructions tendered by each party and gave 17 instructions on its own motion. We have carefully examined all of the instructions given and find all instructions when considered together state the law with substantial accuracy.

Instruction number 8 is a non-mandatory instruction which simply told the jury they were to determine if the Appellee was in the exercise of her duty to make reasonable use of her faculties to see. It was not reversible error to give this instruction.

The trial court permitted the Street Commissioner of Odon to answer over objection questions with reference to the method of digging and filling trenches "all over the entire town of Odon." The trial court also permitted the same witness to testify over objection as to complaints which he made to Appellant about the extra work he had to do on the trenches constructed by Appellant.

The same witness also testified in the same vein and on the same subject matter without objection as follows:

"Q. Did you observe the method that they dug the trenches *all over the entire town? Over the entire Town* of Odon?

A. Yes.

Q. And as Street Commissioner you were around *all over the town* while they were doing this work weren't you?

A. Yes.

* * *

Q. What is your best judgment Mr. Tarvin as to the width of the trenches?

A. They were four and six inch trenches.

Q. What do you mean by four and six?

A. Well they were putting in two inch lines and three inch lines, and they would dig the four inch trenches for the two inch lines and six inch trenches for the three inch lines.

Q. I understand then—or do I understand correctly then that some of the pipe was four inches wide and some of it was six inches wide?

A. Yes.

Q. And do you know how deep they were making these trenches?

A. All the way from six inches to 3½ feet deep.

Q. And you say you observed them covering these and filling these trenches *over in the Town of Odon?*

A. I did.

Q. Now explain to the Court and Jury how they would do that, will you?

A. Well they had a little ford tractor that they would push the dirt over into the trench. Some places they would run over it with the tractor and mashed it down and some places they wouldn't.

Q. Some places what?

A. Some places they weren't mashed down." (our emphasis)

It would be emphasized that three witnesses for Appellant gave very extensive detailed evidence regarding this *entire* construction job in *all* of Odon.

In *Logansport and Wabash Valley Gas Co.* v. *Coate,* 29 Ind. App. 299, 64 N. E. 638 (1902), the plaintiff introduced evidence of other leaks before explosion from other places in the pipe system. It was held that such evidence was relevant and tended to show the condition of the system. In *Farm Bureau Mut. Ins. Co. of Ind.* v. *Seal,* 134 Ind. App. 269, 179 N. E. 2d 760 (1962), this court held that admissions of similar transactions that a particular thing was done is within the discretion of the trial court and will be reversed only on a showing of abuse of discretion. These principles were recently reaffirmed in *NIPSCO* v. *Otis,* 145 Ind. App. 159, 250 N. E. 2d 378 (1969) (trans. den.)

In *State* v. *Monninger,* 243 Ind. 174, 176, 182 N. E. 2d 426 (1962), our Supreme Court stated:

> "It is our considered opinion that the position of appellee is correct for it is well settled that error in admitting evidence at the trial is not available on appeal where the complaining party submits evidence to substantially the same effect."

Both parties in this case introduced extensive evidence relating to the precise subject matter of the questions here propounded to the Street Commissioner. All three of Appellant's witnesses testified in great detail with reference to this precise subject matter. Therefore, no reversible error was committed in allowing the questions to be answered.

In regard to excessive damages the Appellant relies on only two cases, *City of Evansville* v. *Rinehart,* 142 Ind. App. 164, 233 N. E. 2d 495 (1968), and *Allison* v. *Boles,* 141 Ind. App. 592, 230 N. E. 2d 784 (1967). The reasoning or result in neither case is even remotely authority to reverse this case on excessive damage. In fact both are authority to affirm on this issue.

The only evidence on the question of damages was produced by the Appellee and Appellant offered no evidence in this respect. Thus, the Appellee's evidence stands before the court

uncontested. *City of Indianapolis, etc.* v. *Walker et al.,* 132 Ind. App. 283, 168 N. E. 2d 228 (1960).

The rules with reference to excessive damages were recently summarized in *NIPSCO* v. *Otis, supra,* and the damages assessed here are not excessive within those rules.

There is no reversible error. Therefore, the judgment should be and hereby is affirmed.

Hoffman, P.J., Pfaff and White, JJ., concur.

NOTE.—Reported in 259 N. E. 2d 710.