**Carl COFFMAN and Deborah Coffman, Appellants–Plaintiffs,**

v.

**PSI ENERGY, INC., Rumpke of Indiana, LLC, Refuse Handling Services, Inc., and Mountain Tarp, Inc., Appellees–Defendants.**

No. 67A01–0401–CV–35.

Court of Appeals of Indiana.

Sept. 30, 2004.

---

Roger L. Pardieck, The Pardieck Law Firm, Seymour, IN, Keith Johnson, Johnson Law Office, Terre Haute, IN, for Appellants.

Eric M. Cavanaugh, Steven J. Moss, Cinergy Services, Inc., Plainfield, IN, William W. Drummy, Wilkinson Goeller Modesitt Wilkinson & Drummy, Terre Haute, IN, for PSI Energy, Inc.

Steven C. Coffaro, W. Keith Noel, Keating, Muething & Klekamp, PLL, Cincinnati, OH, for Rumpke of Indiana, LLC.

Doris L. Sweetin, Kevin C. Tyra, Tyra & Collesano, P.C., Indianapolis, IN, for Refuse Handling Services, Inc.

Edward R. Hannon, Herbert W. Guy, Jr., Hannon Roop & Hutton, P.C., Indianapolis, IN, for Mountain Tarp, Inc.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Carl Coffman (Carl) and Deborah Coffman (Deborah), (collectively, the Coffmans) appeal the trial court's grant of summary judgment in favor of appellees-defendants PSI Energy, Inc. (PSI), Rumpke of Indiana, LLC (Rumpke), Refuse Handling Services, Inc. (Refuse Handling), and Mountain Tarp, Inc. (Mountain Tarp), with regard to the Coffmans' negligence and products liability claims. In this instance, Carl was injured when the tarp system he was using to cover a Rumpke trailer at Refuse Handling came into contact with a 69,000 volt power line that was owned by PSI.

In particular, the Coffmans contend that summary judgment was erroneously granted in favor of the four appellees because there were genuine issues of material fact regarding: (1) PSI's duty and breach of care with respect to their power lines; (2) Rumpke's failure to warn Carl of the characteristics of a dangerous chattel—the trailer—that it had provided for Carl's use, along the company's alleged failure to train Carl about the proper use of its equipment; (3) Refuse Handling's alleged breach of duty of care to Carl as a business invitee; and (4) the alleged defective design of Mountain Tarp's system, and whether that company's warnings to Carl were inadequate. The Coffmans further maintain that the trial court erroneously determined as a matter of law that their recovery is barred under Indiana's comparative fault scheme as to PSI, Rumpke[1] and Refuse Handling. Concluding that summary judgment was properly entered for all of the appellees, we affirm the judgment of the trial court.

### FACTS

The Coffmans reside in Dugger and, since 1988, Carl had been employed by Buchta Trucking (Buchta) as one of its drivers. Prior to working for Buchta, Carl had driven various types of trucks since 1981. In particular, Carl had experience driving thirty-nine and thirty-two foot dump haulers that involved tarps that rolled over the top of the dump trailer.

During the summer of 1999, Rumpke began subleasing Buchta trucks and drivers to do some hauling for them. At some point, Buchta leased Carl's services and truck cab to Rumpke. On November 16, 1999, Carl was dispatched to Mountain Tarp in Cincinnati, Ohio to pick up a forty-

---

1. In its Appellee's Brief, Rumpke has addressed the Coffmans' allegation in their Complaint concerning Rumpke's "failure to warn" as if it were intended to state a claim against Rumpke under the Indiana Products Liability Act, Indiana Code Section 34–20–2–1, *et seq.* ("the Act"). However, the Coffmans seek relief from Rumpke only under common law negligence theories. In their brief in opposition to Rumpke's motion for summary judgment and on appeal, the Coffmans argued that there are material issues of fact as to whether Rumpke, acting as a supplier of "chattel dangerous for intended use" under Section 392 of the Restatement (Second) of Torts, and acting as Carl's contract employer, failed to exercise reasonable care. It is undisputed that Rumpke is neither a "manufacturer" nor a "seller" within the purview of the Act, and the Coffmans in their Reply Brief specifically state that they do not disagree with Rumpke's contention that it cannot be held liable under the Act.

eight-foot trailer purchased by Rumpke, with a tarp that had been designed, manufactured, and installed by Mountain Tarp. The designated evidence shows that when Mountain Tarp installed its tarpaulin system to the Rumpke trailer that Carl was using, it applied a label warning of dangers posed by overhead power lines. The label, which had been applied near the crank mechanism and adjacent to the tarp brake handle that was used to operate the tarpaulin, stated in large red letters on a white background as follows:

**DANGER**
**Watch For**
**Electrical**
**Lines**
**Overhead**

Appellants' App. p. 136. This label had been affixed to the trailer before Carl obtained the trailer from the Mountain Tarp facility in Cincinnati. The trailer that Carl used on November 16 was at least three feet longer than the trailers Carl had previously pulled, and the tarp was designed to lift overhead, unlike the side-to-side rolling tarp, which Carl had predominantly used in the past. However, a representative from Mountain Tarp taught Carl how to operate the mechanical tarp device, and Carl indicated that he understood the instructions.

After picking up the trailer, Carl received a call on his cellular telephone, directing him to pick up a load of trash at a Refuse Handling distribution facility near Greencastle for transport to a landfill. The designated evidence demonstrated that Carl was aware of PSI's electrical power lines that were located at Refuse Handling because of his prior experience driving to and from that company at least twenty-five times before November 16, 1999.

Carl's trailer was filled at a trash-loading chute located near one of PSI's power lines that carried 69,000 volts of electricity. PSI records indicated that its power line was inspected on October 27, 1999 and, previously, on June 22, 1999.[2] When Carl raised the tarp over the trash-filled trailer, the metal tarp frame made contact with PSI's power lines, and electricity passed through the frame into the tractor-trailer. Carl saw a flash of fire, heard an explosion, and was thrown approximately ten feet from his truck. As a result of the incident, Carl sustained serious injuries, including burning of his spinal cord and nerves in his legs. After the accident, Carl was confined to a wheelchair and suffered from a persistent burning sensation, which he described as being similar to "sitting in scalding water." Appellants' App. p. 458.

On October 11, 2001, the Coffmans filed their complaint for damages for Carl's personal injuries and Deborah's loss of consortium against PSI, Rumpke, Refuse Handling, Mountain Tarp, and Vectren Corp.[3] The complaint alleged that Carl was a business invitee of Refuse Handling when he received a severe electrical shock.

2. In an affidavit, Johnny B. Dagenhart, a professional engineer, testified with respect to the positioning of the power line as follows: [PSI's] electrical line, between poles 818–4567 and 818–4568, which was contacted by the Mountain Tarp cover mechanism operated by [Carl,] exceeded the clearance requirements of … each of the NESC in force from the date of construction in 1963 (Sixth Ed. NESC) through the current editions of NESC (1997) in effect at the time of the accident on November 16, 1999. Appellants' App. p. 226.

3. On January 4, 2002, the Coffmans filed a notice of dismissal regarding Vectren Corp., and the trial court dismissed Vectren Corp. as a defendant on January 22, 2002. Appellants' App. p. 46–48.

The Coffmans also alleged that PSI negligently suspended the Power Line parallel to the graveled driving area of Refuse Handling, that Mountain Tarp failed to properly install the tarp system, and that Mountain Tarp and Rumpke failed to adequately warn Carl of the danger of operating the tarp in proximity to power lines.

By December 2, 2002, all of the appellees had filed motions for summary judgment. Following a hearing on those motions, the trial court granted the appellees' motion to strike the Coffmans' supplemental designation of evidence, granted each of the appellees' motions for summary judgment, and directed the entry of final judgment as to each of them on December 31, 2003. The Coffmans now appeal.

### DISCUSSION AND DECISION

#### I. Summary Judgment Standard of Review

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. On review of a trial court's decision to grant or deny summary judgment, this Court applies the same standard as the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Id.* Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.; see also* Ind. Trial Rules 56(C), (H).

A party seeking summary judgment bears the burden to make a prima facie showing that there are no genuine issues of material fact and that the party is enti-tled to judgment as a matter of law. *Am. Mgmt., Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 428 (Ind.Ct.App.1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.* The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind.2002). For a defendant in a negligence action to prevail on a motion for summary judgment, the defendant must show that the undisputed material facts negate at least one of the elements essential to the negligence claim, or that the claim is barred by an affirmative defense. *McClyde v. Archdiocese of Indianapolis*, 752 N.E.2d 229, 232 (Ind.Ct.App.2001). On appeal, we will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. *Id.* A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Cansler v. Mills*, 765 N.E.2d 698, 701 (Ind.Ct.App.2002), *trans.denied.*

#### II. The Coffmans' Claims

The Coffmans contend that the trial court erroneously granted summary judgment as to all of the appellees. In essence, Coffmans' claims sound in products liability and the failure to warn. Appellants' App. p. 21–23. In particular, the Coffmans maintain that PSI owed a duty— and subsequently breached that duty—to Carl to insulate, mark, or otherwise warn of the uninsulated power line, that Rump-

ke should have warned Carl of the potential dangers of the new trailer and tarp and provided training relative to its use, that Refuse Handling breached a duty to Carl as a business invitee, and that Mountain Tarp's warnings were inadequate and that the company had negligently designed its system. Hence, the Coffmans assert that the negligence of the appellees was the proximate cause of Carl's injuries.

■■ We note that summary judgment is generally inappropriate in negligence cases because issues of contributory negligence, causation, and reasonable care are more appropriately left for the trier of fact. *See Kennedy v. Guess,* 806 N.E.2d 776, 783 (Ind.2004). *Ousley v. Bd. of Comm'rs of Fulton County,* 734 N.E.2d 290, 293 (Ind.Ct.App.2000), *trans. denied.* By the same token, whether the evidence produced by a plaintiff is sufficient to establish a cause of action for negligence is a question of law to be decided by the court. *Miller v. Griesel,* 261 Ind. 604, 308 N.E.2d 701, 707 (1974).

It is well established that in order to recover under a theory of negligence, a plaintiff must establish: (1) a duty on the part of the defendant owed to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff proximately caused by the breach. *Lawson v. Lafayette Home Hosp., Inc.,* 760 N.E.2d 1126, 1129 (Ind.Ct. App.2002), *trans. denied.* This court has held that the proximate cause of an injury is not merely the direct or close cause; rather, it is the negligent act that resulted in an injury that was the act's natural and probable consequence in light of the circumstances. *City of Indianapolis Hous. Auth. v. Pippin,* 726 N.E.2d 341, 346 (Ind. Ct.App.2000).

■ In a similar vein, with respect to strict liability actions, the plaintiff must prove that: (1) the product was defective and unreasonably dangerous; (2) the de-

fective condition existed at the time the product left the defendant's control; and (3) the defective condition was the proximate cause of the plaintiff's injuries. *Natural Gas Odorizing, Inc. v. Downs,* 685 N.E.2d 155, 160 (Ind.Ct.App.1997), *trans. denied.* A product may be defective because of a failure to warn of the dangers inherent in the product's use, *id.* at 161, and a duty to warn consists of two duties: (1) to provide adequate instructions for safe use; and (2) to provide a warning as to dangers inherent in improper use. *McClain v. Chem–Lube Corp.,* 759 N.E.2d 1096, 1103 (Ind.Ct.App.2001), *trans. denied* (citing *Natural Gas,* 685 N.E.2d at 161). However, as our supreme court observed in *Burrell v. Meads,* 569 N.E.2d 637, 639 (Ind.1991), a premises owner only has a duty to warn if it knows of the risk and realizes that it involves an unreasonable risk of harm to invitees. Even more to the point, this court has acknowledged that an individual is required to make reasonable use of his faculties and senses to discover dangers and conditions to which he is or might be exposed. *Gwaltney Drilling, Inc. v. McKee,* 148 Ind.App. 1, 259 N.E.2d 710, 717 (1970). If a danger is so great and so near that a prudent man knowing of its existence would not have encountered it, then it constitutes contributory negligence such as will defeat a recovery. *Howard v. H.J. Ricks Const. Co.,* 509 N.E.2d 201, 206 (Ind.Ct.App.1987), *trans. denied.* Put another way, contributory negligence will result when the plaintiff fails to recognize an obvious risk or danger. *Bridgewater v. Economy Eng'g Co.,* 486 N.E.2d 484, 489 (Ind.1985).

■ So, too, the doctrine of incurred risk will preclude recovery "if the evidence is without conflict and the sole inference to be drawn is that the plaintiff (a) had actual knowledge of the specific risk, and (b) understood and appreciated

the risk." *Schooley v. Ingersoll Rand, Inc.*, 631 N.E.2d 932, 939–40 (Ind.Ct.App. 1994). Incurred risk bars a product strict liability claim when the evidence is undisputed and reasonable minds could draw only one inference. *See Smock Materials Handling Co. v. Kerr*, 719 N.E.2d 396, 402 (Ind.Ct.App.1999). While the allocation of each party's proportionate fault is generally a question for the trier of fact, such is not the case when there is no dispute in the evidence and the fact finder could reach only one conclusion. *See Walters v. Dean*, 497 N.E.2d 247, 254 (Ind.Ct.App. 1986).

Turning to the circumstances before us, the designated evidence before the trial court established that Carl had driven to the Refuse Handling facility approximately twenty-five times in the four or five months that preceded the November 16, 1999 accident. Appellants' App. p. 443. The following deposition testimony from Carl illustrates his knowledge of the risk of injury in these circumstances:

Q: You knew there was a risk if you were doing this tarping process under overhead power lines. There was a risk the tarp might go up and touch the power lines?

A: Yeah, it's possible, yes.

Q: You knew that was a risk?

A: Yes. . . .

Q: You knew it was something you wanted to avoid whether it was you would be injured or property damage or whatever; you knew it was something you wanted to avoid happening?

A: Yes.

Appellants' App. p. 130. In his deposition, Carl described an earlier incident—where no injury resulted—that had occurred when he backed into and tore down a power line while working for a previous employer:

The trailer rose up and actually hit the power lines. The trailer was in the air. I was dumping my load off, and a lot of times, not every time, but a lot of time, when you're in a trailer like that, you go ahead, start moving while you're letting the trailer down. *In other words, you're driving as the trailing [sic] is coming down, and that's what happened. I drove off, except I forgot about the line. I drove off, and my trailer caught the line and tore it down.*

Appellee Refuse Handling's App. p. 13 (emphasis added). Carl was further questioned as follows:

Q: Did you start doing that, start being a little more careful after that?

A: Yes.

Q: And paying more attention for power lines and other overhead objects?

A: For a while. I eventually just took it for granted that I was doing okay. I guess I forgot about it. I think I did okay from there on.

Appellee Refuse Handling's App. p. 14.

Carl acknowledged that, although he was not injured in the accident described above, his superiors warned him to be more careful. Appellants' App. p. 434. This testimony certainly establishes that Carl knew he should not hit the power lines with the tarp or he might be injured. Carl also admitted that on November 16, 1999, while at Refuse Handling's facility, he "was aware they [the power lines] were there, but I didn't think about them." Appellants' App. p. 253, 254, 257. He also stated "they [the power lines] probably were [visible]. I just didn't pay any attention to them." Appellants' App. p. 253–54, 257. Carl went on to acknowledge that if he had simply looked up after parking the trailer, in all likelihood he would have noticed that he was directly beneath the power lines that were overhead. Appellants' App. p. 447. Nonetheless, because Carl

"thought the area was clear," he "really wasn't paying attention to what was above." Appellants' App. p. 449.

In addition to the above discussion, the designated evidence also established that when Mountain Tarp installed its tarpaulin system to the Rumpke trailer, it had applied a label warning of the dangers posed by overhead power lines. There was no dispute that Carl could not have avoided seeing the warning label every time he looked at the handle that operated the tarp system. Carl acknowledged that the label must have been on his truck the day of the accident, because photographs taken immediately after the accident showed the label in its usual place.

It is apparent to us that Carl, while performing the job on November 16, 1999, was simply not paying attention, not looking and not thinking, despite his own knowledge concerning the overhead power lines. To be sure, the evidence established that Carl understood the risk and had actual knowledge of the presence and location of the power lines. As discussed above, he even had a prior experience with a mishap similar to what occurred on November 16, 1999. Simply put, Coffman was aware of the possibility of hitting electrical lines and the dangers associated therewith.

That said, the undisputed facts presented in this case are such that there was no unreasonable risk of harm that PSI, Refuse Handling and Mountain Tarp and Rumpke should have expected would not be discovered or realized by Carl in these circumstances. Although Carl had actual knowledge of the presence and location of the power lines on the day that the injury occurred, he unfortunately ignored the lines. The end result was that Coffman parked under the power lines, raised the tarp arm and sustained the shock.

While we are certainly sympathetic to the Coffmans' plight, it is apparent that the injuries Carl sustained were brought about by his own negligence. In short, Carl's own testimony—in and of itself—negates the question of proximate cause that is indispensable to his negligence claim. Therefore, as a matter of law, the alleged inadequacy of the warnings provided to Carl could not have been a proximate cause of his injuries. Carl's testimony shows that he was fully aware of the risks of injury associated with his conduct, and he disregarded all warnings that were provided. Simply put, no warning could have prevented this accident because Carl essentially paid no attention to what he was doing or where he was doing it. Hence, Carl's negligence in proceeding to encounter and assume these known risks predominated any alleged negligence on the part of all of the defendants combined.

In our view, the evidence overwhelmingly demonstrates that Carl incurred the risk of his injuries, such that his contributory negligence was more than the total of any alleged negligence on the part of the appellees. As a result, no genuine issue of material fact existed in this case, and we can only conclude that summary judgment was properly entered for the appellees.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., concurs.

BAILEY, J., concurs in result in part and dissents in part.

BAILEY, Judge, concurring in result in part and dissenting in part.

I concur in result with the majority's conclusion that the trial court properly granted summary judgment to Rumpke and write separately on that issue because I believe that Rumpke is entitled to summary judgment on the basis that it owed

no duty to Carl as an independent contractor. With respect to all other issues and Appellees, I respectfully dissent with the majority's analysis.

First, unlike the majority, I believe that the bulk of the Coffmans' claims against the Appellees sound in negligence. Ordinarily, summary judgment is inappropriate in negligence cases. *Kennedy v. Guess,* 806 N.E.2d 776, 783 (Ind.2004). This is so because issues of comparative fault, causation, and reasonable care are more appropriately left for determination by the trier of fact. *Ousley v. Bd. of Comm'rs of Fulton County,* 734 N.E.2d 290, 293 (Ind.Ct. App.2000), *trans. denied.* Although the majority gives lip service to the role of the trier of fact, it contends that the court is to decide, as a question of law, whether the evidence produced by a plaintiff is sufficient to establish a cause of action for negligence, citing *Miller v. Griesel,* 261 Ind. 604, 612–13, 308 N.E.2d 701, 707 (Ind. 1974). Slip op. at 8–9. This is true when the court is ruling upon a Trial Rule 50 motion for judgment on the evidence, as in *Miller.* Here, however, the court was ruling upon motions for summary judgment. "Merely alleging that the plaintiff has failed to produce evidence on each element [of a cause of action] is insufficient to entitle the defendant to summary judgment under Indiana law." *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.,* 644 N.E.2d 118, 123 (Ind.1994), *reh'g denied.*

Nevertheless, the majority has determined that, as a matter of law, the Coffmans may not recover from PSI, Rumpke, Refuse Handling, or Mountain Tarp because Carl's contributory negligence exceeded the fault of all others whose fault proximately contributed to his serious injury. Slip op. at 13–14. In so holding, the majority relies upon the antiquated doctrines of contributory negligence and incurred risk, both of which have been subsumed by the doctrine of comparative fault for all defendants who are not governmental entities or public employees. *See, e.g.,* Ind.Code § 34–51–2–2 (providing that the Comparative Fault Act does not apply "to tort claims against governmental entities or public employees"); *see also Heck v. Robey,* 659 N.E.2d 498, 504 (Ind. 1995) ("As a comparative fault statute, the [Indiana Comparative Fault Act] eliminated contributory negligence as a complete defense, as well as other common-law defenses."), *abrogated on other grounds by Control Techniques, Inc. v. Johnson,* 762 N.E.2d 104 (Ind.2002); *and Smith v. Baxter,* 796 N.E.2d 242, 245 (Ind.2003) (reaffirming its holding that the defense of incurred risk as a complete defense "no longer exists; it is subsumed by the concept of fault in our comparative fault scheme"). The Comparative Fault Act, i.e., Indiana Code Section 34–51–2–6, provides a complete defense to Appellees if Carl's contributory fault is "greater than the fault of all persons whose fault proximately contributed to the claimant's damages." *See* Ind.Code § 34–51–2–6(b) ("In an action based on fault that is brought against two (2) or more defendants, the claimant is barred from recovery if the claimant's contributory fault is greater than the fault of all persons whose fault proximately contributed to the claimant's damages.")

Fault apportionment under the Indiana Comparative Fault Act is uniquely a question of fact to be decided by the jury. *See Paragon Family Restaurant v. Bartolini,* 799 N.E.2d 1048, 1056 (Ind.2003) ("The Comparative Fault Act entrusts the allocation of fault to the sound judgment of the fact-finder."); *see also City of Crawfordsville v. Price,* 778 N.E.2d 459, 463 (Ind.Ct. App.2002). However, "at some point the apportionment of fault may become a question of law for the court. But that

point is reached only when there is no dispute in the evidence and the factfinder is able to come to only one logical conclusion." *Price,* 778 N.E.2d at 463 (citing *Robbins v. McCarthy,* 581 N.E.2d 929, 934 (Ind.Ct.App.1991), *reh'g denied, trans. denied* ).

In this case, I do not believe that a fact finder could only arrive at one logical conclusion on the apportionment of fault, i.e., that Carl's contributory fault was greater than the fault of all other persons who proximately contributed to the injuries sustained. In particular, differing inferences can be drawn from the fact that PSI failed to either insulate the Power Line or post warnings detailing the dangers associated with the uninsulated Power Line. Likewise, differing conclusions can be reached from the fact that Refuse Handling failed to designate an area for drivers to safely tarp their vehicles and, further, failed to warn drivers to avoid the uninsulated power lines when tarping. Similarly, the trier of fact could determine that Mountain Tarp's tarping system was unreasonably dangerous and the warning was inadequate.

The determination of what percentage of fault to attribute to a particular person or entity, such as Carl and Appellees, is a factual question. Neither this Court nor the trial court may speculate on the percentage of fault, if any, a trier of fact may assign to Carl, PSI, Refuse Handling, or Mountain Tarp. *See, e.g., Rogers v. Grunden,* 589 N.E.2d 248, 258 (Ind.Ct.App.1992) (discussing Indiana Code Section 34–4–33–4(b), which has been recodified as Indiana Code § 34–51–2–6(b)), *reh'g denied, trans. denied.* Accordingly, I disagree with the majority opinion inasmuch as it affirms the trial court's grant of summary judgment to PSI, Rumpke, and Mountain Tarp on the issue of comparative fault. Rather, I would reverse the grant of summary judg-

ment and remand for trial on the merits of the Coffmans' claims against PSI, Rumpke and Mountain Tarp. A more detailed discussion of my position vis à vis all of the Appellees follows.

*1. Grant of Summary Judgment to PSI*

The Coffmans maintain that PSI owed a duty to Carl to insulate, mark, or otherwise warn of the uninsulated Power Line. PSI responds that, as a matter of law, it did not owe a duty to Carl. In the alternative, PSI asserts that even if a duty existed, the designated evidence reveals that: (1) PSI did not breach any duty owed; (2) PSI's breach was not the proximate cause of Carl's injury; and (3) the Coffmans' negligence claim is barred by the doctrine of comparative fault because Carl's contributory negligence exceeded the fault of all others who proximately contributed to the serious injury. With the exception of PSI's latter contention, I separately address each of these arguments.

First, the existence of a duty running from PSI to Carl is a question of law to be determined by the court. *Brown v. N. Ind. Pub. Serv. Co.,* 496 N.E.2d 794, 796 (Ind.Ct.App.1986), *reh'g denied, trans. denied.* However, a "factual question may be interwoven with the determination of the existence of a relationship, thus making the ultimate existence of a duty a mixed question of law and fact." *Id.* at 797 (citations omitted). A duty might exist then if a certain set of facts is found. *Id.*

In the present case, the question is whether there existed such a relationship between PSI and Carl as to give rise to a duty of care on PSI's part. Companies engaging in the generation and distribution of electricity have a duty to insulate their power lines in places where the general public may come into contact with the lines *and* in places where the utility knows or has knowledge of such facts from which

it should know that a particular segment of the population—other than electric utility employees—will be regularly exposed to uninsulated wires for one reason or another. *Butler v. City of Peru,* 733 N.E.2d 912, 916–17 (Ind.2000); *see also Brown,* 496 N.E.2d at 797–98.

Here, the accident with the Power Line occurred at the Refuse Handling facility, which is an area over which the general public does not traverse. However, the designated evidence reveals that Carl's trailer was filled at a trash-loading chute, which was located near an electrical easement. Over the easement, PSI owns and maintains the uninsulated Power Line. The evidence further demonstrates that PSI inspects the Power Line, by air, approximately three times per year. Indeed, PSI inspected the Power Line on October 27, 1999 and, previously, on June 22, 1999.

In addition, in the four or five months preceding the accident, Carl had driven to the Refuse Handling facility approximately twenty-five times. Carl had raised "that type of tarp system" at the Refuse Handling facility five to seven times. (App. 441.) Further, according to the designated evidence, it was common practice for truck drivers to drive away from the loading bay at the Refuse Handling facility prior to covering their loads with the tarp. Before leaving the facility, however, drivers would place the tarps on their trailers. Indeed, prior to Carl's accident, the evidence reveals that truck drivers would commonly

tarp under or near the electrical wires suspended above the gravel working area at the Refuse Handling facility.

I believe that this evidence and all reasonable inferences drawn from it, in favor of the Coffmans—i.e., the nonmovants—create a genuine issue of material fact regarding whether PSI knew or had reason to know that a particular segment of the population, i.e., truck drivers hauling refuse, would be regularly exposed to the uninsulated Power Line for one reason or another. Accordingly, the trial court erred in granting summary judgment to PSI on the issue of duty.[4]

Further, the designated evidence is undisputed that PSI failed to insulate the Power Line in question. Accordingly, if, after resolution of factual disputes, PSI owed a duty to Carl to insulate the Power Line, it undoubtedly breached that duty. The question would then become whether PSI's breach was a proximate cause of Carl's injuries. In this instance, I would view the questions of foreseeability and proximate cause as factual determinations better left to a fact finder's deliberation. *See, e.g., Rogers,* 589 N.E.2d at 257. Because genuine issues of material fact exist regarding whether PSI owed a duty to Carl to insulate the Power Line in question and whether PSI's conduct was a proximate cause of Carl's injuries, I believe that the trial court erroneously granted summary judgment to PSI.

---

4. In its appellee's brief, PSI argues that the trial court properly granted its motion for summary judgment because the Coffmans failed to designate any evidence that: (1) a meter was located near the loading chute; (2) PSI employees visited the site to read the meter or inspect the Power Line at the same time that truck drivers were "tarping in proximity to PSI's transmission line;" and (3) any of the trailers in use had tarping systems capable of reaching the height of the Power Line. (PSI's Br. at 18.) However, I would remind PSI that the Coffmans, as the nonmovants, were not required to designate specific facts demonstrating the existence of a genuine issue for trial unless PSI first satisfied its summary judgment burden. *See Am. Mgmt., Inc.,* 666 N.E.2d at 428. Rather, PSI, as the moving party in the summary judgment proceeding, bore the burden of proof to make a prima facie showing that it is entitled to judgment as a matter of law, which it failed to do.

### 2. Grant of Summary Judgment to Mountain Tarp

To prevail on its motion for summary judgment, Mountain Tarp had the burden of demonstrating that it is entitled to judgment as a matter of law by negating one or more elements of Coffman's product liability claim. *See* Ind. Tr. Rule 56(C). Because the Coffmans allege that the tarping system design was defective and that the warnings were insufficient, Mountain Tarp was required to designate evidence that the design of the tarp system was not defective and that the warnings were sufficient.

### a. Design Defect

Under the Indiana Product Liability Act, i.e., Indiana Code Section 34–20–1, a plaintiff must prove the product was in a defective condition that rendered it unreasonably dangerous. *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 814 (Ind.Ct. App.1995), *reh'g denied.* Thus, under Indiana Trial Rule 56, Mountain Tarp has the burden of negating an element of the Coffmans' design defect claim. *Wolfe v. Stork RMS–Protecon, Inc.*, 683 N.E.2d 264, 267 (Ind.Ct.App.1997).

As Mountain Tarp notes, "[e]xpert testimony is generally required to establish a design defect." Mountain Tarp's Response Br. at 8 (citing *Whitted v. General Motors Corp.*, 58 F.3d 1200, 1206 (7th Cir. 1995) and *Pries v. Honda Motor Co., Ltd.*, 31 F.3d 543, 546 (7th Cir.1994)). However, rather than supporting its motion for summary judgment with evidence that its tarp system was not defective, Mountain Tarp focuses on the sufficiency of the Coffmans' expert affidavits.

Mountain Tarp does not meet its burden merely by attempting to discredit the Coffmans' experts. Further, none of the evidence designated by Mountain Tarp establishes that the design of the tarp system was not defective. Instead, Mountain Tarp designated portions of Carl's deposition to show that he was negligent. As previously addressed, however, I believe apportionment of comparative fault is a question best left to the jury. Ind.Code § 34–20–8–1 ("In a product liability action, the fault of the person suffering the physical harm, as well as the fault of all others who caused or contributed to cause the harm, shall be compared by the trier of fact in accordance with [the comparative fault act]."); *see also Jarrell v. Monsanto Co.*, 528 N.E.2d 1158, 1167 (Ind.Ct.App. 1988) (contributory negligence not a defense under strict liability), *reh'g denied, trans. denied.*

Moreover, to the extent that Mountain Tarp argues that its tarping system is not unreasonably dangerous, I believe conflicting inferences exist that preclude summary judgment. While Mountain Tarp designated portions of Carl's deposition to show that he was aware of the dangers of overhead power lines, Carl also stated in his deposition that he had parked in approximately the same location and had experienced no incidents with the power lines when using the tarping system. Even if the danger of operating the tarping system near power lines had been open and obvious, past practices of safe use in a way "generally believed to be safe" may create an inference that the danger was not open and obvious. *See FMC Corp. v. Brown*, 526 N.E.2d 719, 725 (Ind.Ct.App.1988) (evidence that crane operators routinely work near power lines and could reasonably believe it was safe to do so created factual question concerning open and obvious danger), *adopted on trans.*, 551 N.E.2d 444 (Ind.1990).

Finally, while the majority correctly points out that the doctrine of incurred risk may serve as a complete bar to recovery in a products liability claim, such a defense is appropriate only where the

evidence is undisputed. Because the Coffmans' expert opined that the tarping system was unreasonably dangerous, a dispute exists concerning the facts, which precludes summary judgment. Accordingly, I would reverse the trial court's grant of summary judgment in favor of Mountain Tarp on the Coffmans' design defect claim.

### b. Insufficient Warning

The adequacy of warnings is classically a question of fact reserved for the trier of fact and, therefore, it is usually an inappropriate matter for summary judgment. *Jarrell*, 528 N.E.2d at 1162. Nevertheless, Mountain Tarp contends that no duty exists to warn of "known or obvious risks." Mountain Tarp Br. at 9.

As previously noted, the existence of an open and obvious danger in this case should be a question left for the jury. Further, Mountain Tarp asserts that the warning label, which provides, "DANGER Watch For Electrical Lines Overhead," was sufficient. Mountain Tarp designated portions of Carl's deposition, in which he stated that he could have read the warning label without his glasses, "[a]s large as [the label] looks." (App.130.) However, Carl had previously testified that he did not remember seeing the label. (App.129.) Moreover, the Coffmans' expert opined that the warning was not sufficient. Because the reasonableness of the warning remains at issue, I believe the trial court erred by granting summary judgment in favor of Mountain Tarp on the Coffmans' insufficient warning claim, and would accordingly reverse the trial court's judgment.

### 3. Grant of Summary Judgment to Refuse Handling

The Coffmans' negligence claim against Refuse Handling is based upon a premises liability theory. Generally, a landowner has no duty to furnish the employees of an independent contractor a safe place to work "in the broad sense as the phrase is applied to an employer." *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1264–1265 (Ind.Ct.App.2002), *trans. denied.* However, the landowner is under a duty to keep the property in a reasonably safe condition for business invitees, including employees of independent contractors. *Id.*

The Restatement (Second) of Torts § 343 (1965) sets forth this duty:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Section 343A of the Restatement (Second) of Torts provides:

A possessor of land is not liable to his invitees for physical harm caused to them by an activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Refuse Handling concedes that it owed Carl, a business invitee, a duty to exercise reasonable care for his safety. However, Refuse Handling claims it is entitled to summary judgment because undisputed facts establish, as a matter of law, that it did not breach this duty. Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide.

*N. Ind. Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 466 (Ind.2003). Whether a particular act or omission is a breach of duty is generally a question of fact for the jury, but can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts. *Id.*

In support of its motion for summary judgment, Refuse Handling designated materials indicating that the Power Line was suspended at an appropriate height for public roadway travel, and designated portions of Carl's deposition indicating that he was aware of power lines at the distribution facility, but was inattentive on the day of the accident. The position of Refuse Handling is succinctly summarized as follows: "As a matter of law, Carl is solely at fault for this accident." (Refuse Handling Br. at 21.) The majority has whole-heartedly adopted this contention. However, in so doing, the majority has construed the evidence in the light most favorable to Refuse Handling, contrary to the appropriate summary judgment standard, and resolved an issue of comparative fault that should be reserved for the jury.

The evidence most favorable to the Coffmans, the nonmovants, indicates that Refuse Handling did not designate an area for drivers to tarp their vehicles. Nor did Refuse Handling warn drivers to avoid the uninsulated power lines when tarping. It is undisputed that the Power Line was suspended at the height recommended in the National Electric Safety Code for public roadway travel. However, the designated materials disclose that the drivers invited onto the Refuse Handling property did not restrict their activities to ingress and egress underneath the power lines, because they needed to tarp their trucks.

Drivers could tarp trucks at the loading chute, but customarily moved from the loading chute after loading and before tarping, if another driver was waiting. Refuse Handling did not discourage this practice, as it speeded up their operations. Too, Refuse Handling used an area near the driveway for storage, restricting the available space for parking and tarping. This is not a situation in which undisputed facts lead only to a single inference. Material questions of fact are not appropriate for resolution by summary judgment. *Smith v. State Lottery Comm'n of Indiana,* 812 N.E.2d 1066, 1073 (Ind.Ct. App.2004).

### 4. Grant of Summary Judgment to Rumpke

I agree with the majority that summary judgment was properly granted to Rumpke. However, this is so because Rumpke owed Carl no duty under the common law theories that the Coffmans advanced. The Coffmans contend that genuine issues of material fact exist concerning whether Rumpke should have warned Carl of the potential dangers of the new trailer and tarp and should have provided training relative to its use. More specifically, the Coffmans argue that Rumpke owed Carl a duty because it supplied him with a dangerous chattel and because of their business relationship. The Coffmans contend that Rumpke breached each of its duties. Rumpke does not directly respond to either of the Coffmans' arguments, but rather asserts that Rumpke was not the proximate cause of Carl's injuries.

### a. Duty of Supplier of Chattel Dangerous for Intended Use

In *McGlothlin v. M & U Trucking, Inc.,* 688 N.E.2d 1243 (Ind.1997), *reh'g denied,* our supreme court rejected the latent/patent defect distinction and adopted the Restatement (Second) of Torts §§ 388 and 392 to be used when determining whether a supplier of a dangerous chattel has a duty to inspect, discover, and warn

the borrower. *Id.* at 1245. ("[W]hen the alleged negligence is the supplying of a defective chattel that causes injury, the appropriate considerations are better reflected in Sections 388 and 392 of the Restatement (Second) of Torts."). In some instances, a supplier may owe a common law duty to use reasonable care, apart from the duty to warn embodied within Section 388.[5] *Foxworthy v. Heartland Co–Op, Inc.*, 750 N.E.2d 438, 443–44 (Ind.Ct.App.2001), *trans. denied.*

The Coffmans claim Rumpke owed Carl a duty pursuant to Section 392, "Chattel Dangerous For Intended Use," which provides:

> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by the person for whose use the chattel is supplied
>
> (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
>
> (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

The undisputed designated evidence reveals that Rumpke had no reason to know that the trailer and tarp were dangerous instrumentalities when used as intended. Carl drove his truck, pulled the new trailer with the tarp attached for two hours and then loaded the trailer. The trailer and tarp were suitable for those intended purposes. Carl was endangered only when the chattel was used in an unintended manner, that is, in close proximity to the Power Line. Thus, as a matter of law, Rumpke owed Carl no duty under the common law theory applicable to the supplier of a chattel dangerous for its intended use.

*b. Duty Owed by Rumpke as Contractee to Carl as Independent Contractor*

The Coffmans argue that Rumpke owed Carl a duty of care "arising from their business relationship." Appellant's Br. at 24. The Coffmans also allege that Rumpke breached a "duty of reasonable care" because Rumpke should have offered Carl training and instruction relative to the performance of his work and, more specifically, should have advised Carl of OSHA regulations pertaining to the operation of trailers under power lines.

In Indiana, a principal is not liable for the negligence of an independent contractor unless one or more of five recognized exceptions apply to the facts presented. *Vaughn v. Daniels Co.*, 777 N.E.2d 1110, 1133 (Ind.Ct.App.2002), *clarified on reh'g*, 782 N.E.2d 1062 (Ind.Ct.App.2003). The exceptions are: (1) where the contract requires the performance of intrinsically

---

5. Section 388 provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. *Id.*

Rumpke designated materials disclosing that Carl was the employee of Buchta Trucking, rather than the employee of Rumpke. In relation to Rumpke, Carl was admittedly an independent contractor. Thus, Rumpke satisfied its summary judgment burden to make a prima facie showing that it is entitled to judgment as a matter of law because it has no duty to Carl. *See Am. Mgmt., Inc.*, 666 N.E.2d at 428. To withstand the grant of summary judgment, the Coffmans were then required to designate facts indicating that an exception to the absence of duty applies. They did not designate any evidence tending to show that any of the five enumerated exceptions is applicable. Absent a duty, there can be no breach. *Vaughn*, 777 N.E.2d at 1133. Accordingly, the trial court properly granted summary judgment to Rumpke.

Finally, I observe that often the dispute is not about the decision to be made, but rather who will make the decision. Regarding the legislatively enacted scheme for resolving tortious acts, the Comparative Fault Act weighs heavily in favor of the jury's ability to decide the relative fault of any particular party to a lawsuit. From my review of the facts in this case, I find no reason to deviate from this statutory scheme by denying the Coffmans their right to appear before a jury and present their case for its consideration and decision.

For these reasons, I concur in result with the majority opinion with respect to

Rumpke. As to the remaining issues, I respectfully dissent.